# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| NANETTE COOPER | § | |
| | § | Civil Action No. 4:16-CV-860 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| LEWIS BENAVIDES, ET AL. | § | |
| | § | |

## MEMORANDUM ADOPTING IN PART REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On July 3, 2017, the report of the Magistrate Judge (Dkt. #35) was entered containing proposed findings of fact and recommendations that Defendants' Motion to Dismiss (Dkt. #27) seeking dismissal of Plaintiff Nanette Cooper's Second Amended Complaint be granted in part and denied in part. Having received the report and recommendation of the Magistrate Judge (Dkt. #35), having considered each of Defendants' timely filed objections (Dkt. #40), Cooper's response thereto (Dkt. #46), each of Cooper's timely filed objections (Dkt. #41), and Defendants' response thereto (Dkt. #44), and having conducted a de novo review, the Court is of the opinion that the Magistrate Judge's report (Dkt. #35) should be adopted in part as set forth below.

## BACKGROUND

On November 9, 2016, Plaintiff Nanette Cooper initiated this lawsuit against Texas Woman's University ("TWU"), Lewis Benavides, Bob Mabry, Dr. Abigail Tilton, and Dr. Carine M. Feyten (Dkt. #1). After amending her complaint, Cooper dropped her claims against TWU (Dkt. #26 at 1). Cooper's Second Amended Complaint raises claims against Benavides, Mabry, Tilton, and Feyten (collectively "Defendants") in both their individual and official capacities on behalf of TWU.

Defendant Feyten is the President and Chancellor of TWU. Defendants Benavides, Mabry, and Tilton are TWU administrators. Cooper was employed by TWU in various roles within the biology department over the span of seventeen years (Dkt. #26 at 2-3). For the Fall 2016 semester, Cooper was appointed as an Adjunct Faculty member (Dkt. #26 at 3). Cooper's appointment letter read that the "position is a part-time temporary, non-tenure-track position, and this offer of appointment is not an offer of future employment, explicit or implied, beyond the Fall 2016 Semester" (Dkt. #27-1). Additionally, the appointment was expressly "subject to change depending on the needs" of TWU's biology department (Dkt. #27-1). In Fall 2016, Cooper started teaching in the biology department. As a TWU Faculty Member, Cooper was bound by the terms of the TWU Policy Manual. The Manual stated that "[n]othing in these guidelines limits 'at will' employment in Texas and at Texas Woman's University or existing non-renewal policies" (Dkt. #28-4 at 4). Further, as stated in its Operating Policy and Procedure, TWU is an at-will employer "for all employees except tenured faculty, tenure-track faculty, or any employee on a valid TWU written contract during the period of the contract" (Dkt. #28-5).

On October 13, 2016, Cooper received an email from TWU's Human Resources Department directing her to meet with Defendants Mabry and Benavides to discuss "an important matter." In the meeting, Defendants Mabry and Benavides confronted Cooper with allegations that she had secretively recorded confidential meetings with faculty members. Cooper denies these allegations. Even though she disputed the accusations, Cooper was escorted from the TWU campus and was suspended with pay while TWU investigated the matter. While suspended, Cooper was prohibited from teaching at TWU or communicating with anyone from TWU. Cooper claims Defendants Mabry and Benavides warned her that communications with anyone at TWU about their meeting would constitute grounds for immediate termination (Dkt. #26 at 3).

On October 20, 2016, Defendants Benavides and Mabry, acting on behalf of Defendants Tilton and TWU, terminated Cooper's employment for alleged "multiple instances of unsatisfactory job performance and unsatisfactory conduct" (Dkts. #27-2; 28-3). Cooper alleges that she was never informed of the "reasoning behind her termination" (Dkt. #26 at 3). Cooper alleges that she requested, but did not receive a pre-termination hearing or an adequate opportunity to respond to the allegations (Dkt. #26 at 4). In its termination letter to Cooper, TWU scheduled to review its findings with Cooper on October 20, 2016, at 11:00 a.m., but Cooper canceled the meeting at 7:17 a.m. that same morning. The termination letter further states that TWU's attempts to re-schedule the meeting were unsuccessful (Dkt. #27-2). Following the October 13, 2016 meeting, Defendants allegedly disclosed to others that Cooper's employment was terminated because she recorded confidential conversations with other faculty members, resulting in damage to Cooper's reputation as a trustworthy employee. Cooper asserts she was contacted by a former TWU administrative assistant who stated "she heard what had happened," and that rumors had spread among the student body that Cooper had recorded confidential conversations (Dkt. #26 at 4).

After Cooper was terminated, Defendants left voicemails on Cooper's office telephone informing Cooper that she could retrieve her personal belongings. This proved problematic as Cooper no longer had access to the TWU campus or her office telephone. As such, Cooper alleges Defendants failed to afford her any reasonable opportunity to retrieve her belongings from TWU.[1] After this, Cooper's personal property was allegedly used at public events (i.e., a Christmas party), thrown away, and/or freely given to others without her approval (Dkt. #26 at 5).

---

[1] TWU's termination letter to Cooper asked for Cooper's cooperation in returning TWU's property, but did not explain how Cooper could retrieve her property.

Cooper's original complaint sought damages and injunctive relief, alleging her employment at TWU was terminated in violation of Cooper's procedural and substantive due process rights, and that her personal property was intentionally taken and converted to public use without her consent and without payment of any compensation (Dkt. #1). Cooper's original complaint also raised breach of contract and conversion claims (Dkt. #1). On December 12, 2016, Cooper filed an amended complaint (Dkt. #2). On January 13, 2017, the Court ordered Cooper to serve her amended complaint by February 7, 2017, or face dismissal for failure to prosecute (Dkt. #3). Cooper served the complaint on all Defendants by January 24, 2017 (Dkts. # 8-11). Defendants filed an amended motion to dismiss on February 14, 2017 (Dkt. #15). The Court granted Cooper leave to file a Second Amended Complaint by April 26, 2017 (Dkt. #24). Cooper timely filed her Second Amended Complaint (the live complaint), asserting: (1) procedural due process claims against Defendants in their official capacities; (2) procedural due process claims against Defendant in their individual capacities; (3) substantive due process claims against Defendants in their individual capacities; and (4) a takings claim (Dkt. #26). In her Second Amended Complaint, Cooper alleges she had a property interest in her employment at TWU, which she was deprived of without a hearing. Further, Cooper asserts that she has a liberty interest in her reputation as a trustworthy employee, which was taken without due process when Defendants falsely accused her of recording confidential conversations, disclosed those allegations to the public, and failed to afford her a name-clearing hearing (Dkt. #26 at 7). Additionally, Cooper alleges Defendants' intentional exercise of control over her personal property without her consent or permission, and their denial of any reasonable opportunity to retrieve her property, constitutes a taking (Dkt. #26 at 9). Cooper seeks monetary damages for lost wages, loss of earning capacity, damages to her professional and personal career, the value of her personal property, and emotional

distress damages, as well as injunctive relief in the form of a full due process hearing, a hearing to clear her name, reinstatement to teaching, and return of her personal property, and an award of fees, costs, and interest (Dkt. #26).

On May 10, 2017, Defendants, filed their Motion to Dismiss (Dkt. #27). Cooper filed a Response on May 23, 2017 (Dkt. #28), and Defendants filed a Reply on May 30, 2017 (Dkt. #31). On July 3, 2017, the Magistrate Judge entered a report and recommendation (Dkt. #35) recommending that Defendants' Motion to Dismiss be granted in part and denied in part. Cooper and Defendants each filed objections to the report on July 31, 2017 (Dkts. #40, 41). Defendants filed a response to Cooper's objections on August 14, 2017 (Dkt. #44), and Cooper filed a response to Defendants' objections on August 15, 2017 (Dkt. #46).

## OBJECTIONS

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). In the present case, both Cooper and Defendants have filed objections to the Magistrate Judge's report (Dkts. #40-41). The Magistrate Judge found "with regard to the disposition of Cooper's due process claims, [as follows]: (1)(a) sovereign immunity bars Cooper's procedural due process claims against Defendants in their official capacities for violation of her alleged property interest in continued employment with TWU; (b) Cooper's procedural and substantive due process claims against Defendants in their individual capacities for violation of her alleged property interest in continued employment with TWU should be dismissed; (2)(a) Cooper's procedural due process claims against Defendants in both their individual and official capacities for violation of her alleged liberty interest should survive the Motion to Dismiss; and (b) Cooper's substantive due

5

process claims against Defendants in their individual capacities for violation of her alleged liberty interest in failing to provide a name-clearing hearing should be dismissed" (Dkt. #35 at 21-22). Regarding Cooper's taking claim, the Magistrate Judge found: (1) that Cooper's claim is not moot and her alleged injuries are "fairly traceable" to Defendants' acts and/or omissions (Dkt. #35 at 23); (2) that Cooper's allegations that "Defendants knew the property belonged to Cooper, they did not return it, and they used it for a public purpose" adequately stated a claim for relief at this stage in the proceedings (Dkt. #35 at 24); and (3) Defendants were not entitled to qualified immunity because as alleged, their conduct violated "clearly established statutory or constitutional law of which a reasonable person would have known" (Dkt. #35 at 25). In making these recommendations, the Magistrate Judge considered documents outside of the Second Amended Complaint. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (A court may consider documents attached to a motion to dismiss if they are referred to in the Cooper's complaint and are central to the Cooper's claim). Specifically, the Magistrate Judge found that:

> neither Party objects to the Court's considering the appointment letter [Dkts. 27-1; 28-2], the termination letter [Dkts. 27-2; 28-3], and the TWU policies [Dkt. 28-4] at [the Motion to Dismiss stage], and the Court finds these documents are central to (and mentioned in) the Second Amended Complaint [*see* Dkt. 26]. Accordingly, the Court considers these documents in determining whether Plaintiff's claims should survive the 12(b)(6) Motion to Dismiss. Defendants also have submitted an affidavit and letters dated after this lawsuit was filed stating TWU returned or attempted to return all of Plaintiff's personal property [Dkt. 27-3; 27-4; 27-5]. In response, Plaintiff has submitted her own affidavit contradicting Defendants' evidence [Dkt. 28-1]. The Parties' affidavits and the post-filing letters are not referenced in Plaintiff's Second Amended Complaint and are not properly before the Court for purposes of Defendants' Rule 12(b)(6) motion. The Court may consider these documents for purposes of its jurisdictional analyses, however, and does so where necessary.

(Dkt. #35 at 8, n.2). There is no objection to the documents considered by the Magistrate Judge and/or the manner in which they were considered; accordingly, the Court similarly considers such documents in its de novo review.

Defendants object to the analysis of Cooper's procedural due process claim based on a liberty interest because of: (1) the Magistrate Judge's incorrect finding that Cooper's allegations met the fourth and fifth elements of a liberty interest procedural due process claim; (2) the Magistrate Judge's incorrect finding that Defendants are not entitled to qualified immunity because their alleged conduct violated a clearly established right of which a reasonable person would have known (Dkt. # 40 at 5). Defendants further object to the analysis of Cooper's taking claim because the Magistrate Judge: (1) erroneously analyzed Cooper's standing; (2) failed to consider whether Cooper's injuries are fairly traceable to the individual Defendants; (3) failed to deny the claim as moot given that it is premised on already-returned property; (4) incorrectly found Defendants had intent to take and the property was put to public use; and (5) erroneously concluded Defendants' alleged conduct constituted a clearly established intentional taking for public use (Dkt. #40 at 5-6). Cooper objects that the Report and Recommendation erred in recommending dismissal of Cooper's procedural and substantive due process claims regarding a property interest because Cooper has a property interest in her continued employment at TWU (Dkt. #41 at 3-4). Cooper also objects that the Magistrate Judge erred in recommending dismissal of her substantive due process claim for violation of her property interest because Cooper had a constitutionally protected property interest in her employment and the manner in which Cooper was terminated "is precisely the type of arbitrary and capricious behavior that is prohibited under the Constitution" (Dkt. #41 at 7-8).

### 1.    *Procedural Due Process Claim Based on a Liberty Interest*

### A.    *Official Capacity*

Defendants object that the Magistrate Judge erred in failing to recommend dismissal of Cooper's "procedural due process claim against them in their official capacities for lack of subject-matter jurisdiction—to the extent the claim stems from a purported liberty interest in reputation" (Dkt. #40 at 6).  Defendants assert that there is no ongoing violation of federal law because "[Cooper] cannot establish a deprivation of any liberty interest," namely because Cooper was provided notice and opportunity to respond at the October 13, 2016 pre-termination meeting (Dkt. # 40 at 6-7).  Defendants declare that the Magistrate Judge's conclusion "that an employer cannot satisfy due process by providing an opportunity to respond until *after* process is legally required" is incorrect and instead, "[i]f, after the conclusion of this process, the stigmatizing charges become public, due process does not require the employer to provide process a second time" (Dkt. #40 at 9).  Cooper responds that "Plaintiff was not provided with adequate notice or an opportunity to be heard prior to the discharge," and the "stigmatizing rumors regarding Plaintiff began to spread after her meeting with Defendants Mabry and Benavides on October 13, 2016," and "[t]hus 'the October 13, 2016 meeting cannot itself have constituted a 'name-clearing hearing' sufficient to satisfy due process" (Dkt. #46 at 2).  The Magistrate Judge found that:

> Defendants proffer no evidence to rebut Plaintiff's allegations that she was terminated and escorted from the building and that thereafter it became widely known at TWU that Plaintiff was terminated for misconduct.  These allegations raise an inference that Defendants publicized the reason for her termination.  Plaintiff further alleges those accusations of misconduct were false….And though Plaintiff claims she met with Defendants Mabry and Benavides on October 13, 2016, prior to her termination, neither Plaintiff nor Defendants indicate whether Plaintiff received notice prior to that meeting warning her that the meeting concerned her potential termination….Moreover, even if Plaintiff had received such notice, Plaintiff alleges the stigmatizing rumors began to spread *after* the meeting: because there was no need at the time to "clear" Plaintiff's name, the

> October 13, 2016 meeting cannot itself have constituted a "name-clearing hearing"
> sufficient to satisfy due process.

(Dkt. #35 at 15-16). "[D]ischarge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." *Vines v. City of Dallas*, 52 F.3d 1067 (5th Cir. 1995) (citing *Rosenstein v. City of Dallas, TX,* 876 F.2d 392, 395 (5th Cir.1989), *reinstated in relevant part,* 901 F.2d 61 (5th Cir.1990) (en banc), *cert. denied,* 498 U.S. 855 (1990)). "[P]ublic officials do not act improperly in publicly disclosing charges against discharged employees, but they must *thereafter* afford procedural due process to the person charged." *Id.* (quoting *Rosenstein,* 876 F.2d at 392) (emphasis in original). The seven-part stigma-plus-infringement test requires the employee showing: "that [s]he was discharged, that defamatory charges were made against [her] in connection with the discharge, that the charges were false, that no meaningful public hearing was conducted pre-discharge, that the charges were made public, that [s]he requested a hearing in which to clear [her] name, and that the request was denied." *Id.* (quoting *Rosenstein,* 876 F.2d at 395-96). "[T]he remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'" *Codd v. Velger*, 429 U.S. 624, 627 (1977). "If a government employer discharges an individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name, however, the individual may recover monetary damages under § 1983 for the deprivation of his liberty under the Fourteenth Amendment." *Rosenstein*, 876 F.2d at 395 (citing *Owen v. City of Independence,* 445 U.S. 622, 633 n. 13 (1980)).

Defendants cite to *Higgenbotham v. Connaster*, 420 F. App'x 466, 469 (5th Cir. 2011), for the proposition that the October 13, 2016 meeting provided Cooper with "*more* process" than what the Fifth Circuit has held to be adequate (Dkt. #40 at 8) (emphasis in original). In *Higginbotham*,

the Fifth Circuit found that the Cooper's allegations failed to meet element four of the seven-part

"stigma plus infringement" test for alleging procedural due process violations of a liberty interest.

While discussing the linked requirements, the Fifth Circuit also considered the fourth element:

> In particular, concerning the linked requirements that a plaintiff request an opportunity to clear her name and that her employer deny such a request, Higgenbotham's complaint asserts only that "her respective employers have refused her request for a meaningful hearing to clear her name." Higgenbotham fails to assert a connection between the denial of a name-clearing hearing and the particular defendants in this case. Moreover, she does not identify the request for a hearing or its denial. The allegations in the complaint point toward the opposite conclusion—that Higgenbotham was able to present her side of the story both verbally before the assistant principal and in writing. These facts cast doubt on the fourth element listed in *Hughes*. Additional facts would be necessary to establish that Higgenbotham did not have an opportunity to be heard and that Appellants refused such a hearing when requested.

420 F. App'x at 469.    The Court is not convinced that the Fifth Circuit's statement in

*Higgenbotham* stands for the proposition that because Higgenbotham was able to present her side

of the story both verbally before the assistant principal and in writing, Higgenbotham could not

establish the fourth element.  As the Fifth Circuit noted, these allegations "cast doubt" on the fourth

element; they do not conclusively decide the element.   "Liberty to gain employment is affected by

stigmatizing charges made public, which create a badge of infamy. The mere fact of having been

fired, however, does not affect a liberty interest. If stigmatizing charges are made public, then the

employee is entitled to request, and to receive, a name-clearing hearing." *Castillo v. City of La

Villa*, No. 7:13-CV-418, 2014 WL 1386307, at *3 (S.D. Tex. Apr. 9, 2014). "[T]he process due

such an individual is merely a hearing providing a public forum or opportunity to clear one's name,

not actual review of the decision to discharge the employee." *Id.* (quoting *Rosenstein*,

876 F.2d at 395).  The Court agrees with the Magistrate Judge's conclusion that because Cooper

alleges the stigmatizing rumors began to spread after the October 13, 2016 meeting, that meeting

cannot be considered a "name-clearing hearing sufficient to satisfy due process." This objection is overruled.

Defendants further object that the Magistrate Judge unreasonably inferred that Defendants publicized the stigmatizing charge from insufficient factual allegations in Cooper's Second Amended Complaint. The Magistrate Judge found the fifth element was adequately alleged in Cooper's Second Amended Complaint because she claimed that following a private meeting with Defendants Mabry and Benavides where Cooper's employment was terminated, she was publicly escorted from the TWU campus and it thereafter became publicly known that she was fired for misconduct. The Court finds that the contentions in Cooper's Second Amended Complaint while sparse (particularly given that Plaintiff has been granted an opportunity to amend) adequately allege that the stigmatizing charges were made public at this stage.[2] Cooper has alleged that she was contacted by a TWU employee about her termination for misconduct and was informed that the student body was aware of her termination for misconduct. Because these stigmatizing allegations were made available to employees and students who should not have been any part of the investigation process, Cooper has sufficiently alleged that the stigmatizing allegations were "made public." The Court finds that Cooper has offered sufficient factual allegations to justify discovery on the extent to which those accusations have been communicated. *See Kelley v. Chambers Cty., Texas*, No. 3:12-CV-00194, 2013 WL 1003455, at *2 (S.D. Tex. Mar. 13, 2013) (regarding the fifth element, the court found the Cooper's allegations that the defendants spread rumors about her stealing a diamond ring were sufficient to survive a motion to dismiss). It is

---

[2] Defendants cite to several cases in support of their argument that Cooper has insufficiently pleaded the fifth element: *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 261 n. 20 (5th Cir. 1984); *Ortwein v. Mackey,* 511 F.2d 696, 699 (5th Cir. 1975); *Wells v. Doland,* 711 F.2d 670, 676 n. 8 (5th Cir. 1983); *Hughes v. City of Garland*, 204 F.3d 223, 228 (5th Cir. 2000); *In re Selcraig*, 705 F.2d 789, 796 n.6 (5th Cir. 1983). None of these cases analyze procedural due process claims for alleged violations of a liberty interest in the context of a motion to dismiss. Accordingly, the Court finds them to be instructive, but not decisive at this current juncture in the case.

important to note that the Court does not consider whether these allegations will survive a motion for summary judgment. At this stage in the litigation, the Court only considers that Plaintiff's allegations regarding her liberty interest claim are such that they allow the court to infer more than the mere possibility of wrongdoing on Defendants' part. *See Harris v. City of Balch Springs*, 9 F. Supp. 3d 690, 701 (N.D. Tex. 2014)(At the motion to dismiss stage, "the question is the sufficiency of the allegations in the pleadings; Plaintiff does not have to prove that she will ultimately prevail on this claim"); *see also Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 742 (W.D. Tex. 2011) ("The fact that the claim is plausible allows it to survive at the motion to dismiss stage"). Accordingly, Defendants' objection is overruled. Because Cooper has properly alleged that the stigmatizing charges were made to the public, Cooper has properly alleged a procedural due process claim based on a liberty interest.

### B. *Individual Capacity*

Defendants assert that "[e]ven if [Cooper's] pleadings state a claim for a violation of procedural due process based on a liberty interest, Defendants object to the [Report's] recommended finding that the factual allegations support the conclusion that Defendants' alleged conduct violated a 'clearly established right'" (Dkt. #40 at 12). Defendants argues that the report and recommendation "approaches the question at a high level of generality, without considering the particularized facts of the case" (Dkt. #40 at 12). As an example, Defendants contend that the Magistrate Judge emphasizes that Cooper sought to reschedule her second pre-termination meeting, but fails to identify any authority for the conclusion that "it was 'clearly established' at the time of termination that the Fourteenth Amendment required Defendants to continue their attempts to reschedule the second pre-termination meeting after the first two attempts failed" (Dkt. #40 at 12). Defendants also argue that "it was not clearly established that the alleged facts

constitute an official or intentional publication of the stigmatizing charges by Defendants" (Dkt. #40 at 13). "Finally, Defendants object to the lack of individualized analysis in the context of qualified immunity," namely because the report and recommendation "lumps 'Defendants together but—because individual capacity claims seek to impose individual liability—the Court must assess whether each Defendant violated a clearly established constitutional right" (Dkt. #40 at 13). Cooper responds that under *Board of Regents of State Colleges v. Roth*, Defendants are not entitled to qualified immunity because "Plaintiff has clearly established her right to a name-clearing hearing at the time Defendants violated that right"(Dkt. #46 at 3).

At the pleading stage, an individual defendant official is entitled to qualified immunity "unless [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). The qualified immunity analysis has two steps, which can be taken up in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Viewing Cooper's allegations regarding Defendants' alleged conduct in the light most favorable to her, the Court, like the Magistrate Judge concluded, is not convinced at this time that the Motion to Dismiss should be granted; however Plaintiff has failed at present to (1) clarify each individual defendant's alleged conduct under this claim; and (2) respond with specific, concrete facts demonstrating each individual defendant is not entitled to a qualified immunity defense. As such, Defendants' Motion to Dismiss as to Cooper's procedural due process

claims based on a liberty interest asserted against Defendants in their individual capacities is referred back to the Magistrate Judge for further proceedings related to this claim and the application of qualified immunity.

## 2.      *Takings Claim*

Defendants object that the Magistrate Judge erred in finding Cooper has standing to bring her takings claim because it incorrectly finds that Cooper has an injury fairly traceable to Defendants in their individual capacities. (Dkt. #40 at 14-15).   Cooper responds that Cooper's taking claim "directly 'links Defendants' act and/or failures to act to [Cooper's] alleged harms'" (Dkt. #46 at 4).   Further, Cooper asserts that because of the "vast differences in the Parties' arguments regarding the Defendants' true attempts to secure all of Plaintiff's personal belongings for her retrieval," this claim is not moot and Cooper has standing (Dkt. #46 at 4).   Cooper contends that the rest of the Magistrate Judge's conclusions leading to the recommendation that Cooper's taking claim survive the Motion to Dismiss are correct (Dkt. #46 at 4).   The Report and Recommendation stated:

> Neither Party cites any authority for their positions regarding mootness and/or standing (excepting the citations to cases outlining the general propositions associated with such claims), and the Court has found none directly on point.  The Parties' arguments and evidence clearly show, however, that the Parties continue to disagree about the extent to which Plaintiff has or has not retrieved her personal property from TWU's campus….The Parties' arguments and evidence tell two different stories about the alleged takings and Plaintiff's attempts to retrieve the property from TWU.  Not only is the controversy between the Parties live, Plaintiff's averments and allegations link Defendants' acts and/or failures to act to her alleged harms.  This is sufficient to show her claims are not moot and that her claimed damages are "fairly traceable" to Defendants' acts and/or failures to act on the record before the Court at this stage.

(Dkt. #35 at 23).

In addition to other factors, to have constitutional standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be

'fairly…trace[able] to the challenged action of the defendant, and not…th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976)).  In her Second Amended Complaint, Cooper alleges that Defendants "caused [Cooper] to be escorted from the campus in mid-October, said Defendants instructed [Cooper] not to return to her office or research areas and to stay away from campus….TWU employees were erroneously told that [Cooper] would not be returning to pick up her property….[Cooper's] belongings were used at the department holiday party [without her permission]" (Dkt. #26 at 5).  The Court finds that these allegations are sufficient to satisfy the "fairly traceable" element of standing.  Moreover, the Court finds that this issue is not moot as Defendants suggest.  "A case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome' of the litigation."  *Ramirez v. Lone Star Pediatrics, P.A.*, No. 3:13-CV-2035-L, 2014 WL 1281510, at *2 (N.D. Tex. Mar. 31, 2014) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)).  "Thus, if events after a case is filed resolve the parties' dispute, the case must be dismissed as moot because federal courts do not have the constitutional authority to decide moot cases." *Id.* (citing *Carr v. Saucier,* 582 F.2d 14, 15 (5th Cir. 1978)).  Cooper asserts in her response to Defendants' objections that the Parties remain steadfast to their "vastly differ[ent]" arguments and therefore, this is still a live controversy.   The Court finds that this claim is not moot because the Parties still disagree as to whether Cooper has or has not retrieved her personal property from TWU's campus. These objections are overruled.

Defendants further argue that the Magistrate Judge erroneously found that Cooper's taking claim was meritorious because none of the factual allegations it relied on in forming that conclusion "create[] the requisite inference regarding Defendants' intent to take [Cooper's]

personal property nor that the 'taking' was for public use" (Dkt. #40 at 16-17). Cooper responds that the Magistrate Judge's conclusion is correct. The Magistrate Judge found:

> Here, Plaintiff alleges "TWU employees were erroneously told that [Cooper] would not be returning to pick up her property,…[and Cooper's] belongings—including a Christmas tree, punch bowls, serving trays, and other kitchen utensils—were used at the department holiday party." By alleging Defendants stated Plaintiff was not returning to pick up "her" property, and that the property was then used for a party, Plaintiff has sufficiently alleged Defendants knew the property belonged to Plaintiff, they did not return it, and they used it for a public purpose. While Defendants claim the evidence of record wholly refutes Plaintiff's allegations—that all personal property has been returned to Plaintiff and her takings claim is now moot—the issue currently before the Court is whether Plaintiff's Second Amended Complaint, considered alongside the appointment letter, the termination letter, and the TWU policies, states a claim. Whether other evidence shows that the Court should dismiss the claim is irrelevant at this stage of the proceedings.

(Dkt. #35 at 23-24). The Court agrees with the conclusion reached in the Report and Recommendation that Cooper's claim does not wholly lack merit. To establish the elements of a taking, a plaintiff must allege that the government intentionally appropriated private property for "public use," which in turn requires the government to provide the owner of the private property with "just compensation." *See Kelo v. City of New London*, 545 U.S. 469, 477-78 (2005). Cooper's Second Amended Complaint alleges that Defendants averred that "[Cooper] would not be returning to pick up her property," and Cooper's belongings were "used at the department Christmas party." With these allegations, Cooper's Second Amended Complaint adequately alleges that Defendants knew the property belonged to Cooper, they did not return it, and they used it for a public purpose. This objection is overruled.

Defendants also object that the Magistrate Judge's analysis regarding Defendants' assertion of qualified immunity on this claim is incorrect because "a reasonable official in Defendants' position would not have known [their conduct] constitutes an intentional taking for public use" (Dkt. #40 at 19). Further, Defendants contend the conclusion in the Report and

Recommendation is incorrect because the Magistrate Judge did not consider the individual actions of Defendants in deciding qualified immunity (Dkt. # 40 at 19). Viewing Cooper's allegations regarding Defendants' alleged taking in the light most favorable to her, the Court, similar to the Magistrate Judge, is not convinced at this time that the Motion to Dismiss should be granted; however Plaintiff has failed at present to (1) clarify each individual defendant's alleged conduct under this claim; and (2) respond with specific, concrete facts demonstrating each individual defendant is not entitled to a qualified immunity defense. As such, Defendants' Motion to Dismiss as to Plaintiff's takings claim asserted against Defendants in their individual capacities is referred back to the Magistrate Judge for further proceedings related to this claim and the application of qualified immunity.

### 3.    *Procedural and Substantive Due Process Based on a Property Interest*

Cooper objects that the Magistrate Judge erred in recommending that Cooper's substantive and procedural due process claims based on a property interest be dismissed (Dkt. #41 at 3-4). Cooper argues that "a number of factors suggest that Cooper had an objectively-based expectancy of continued and/or renewed employment" and therefore, had a property interest in her continued employment at TWU (Dkt. #41 at 4). Cooper asserts that TWU's request that Cooper serve as professor in every semester she taught this course, being listed as the professor for the same course in the Spring 2017 schedule, previous letters of employment for other roles at TWU all "amounted to an objective-based expectancy by Cooper for her continued or renewed employment" (Dkt. #41 at 6). Defendants respond that these factual allegations were neither pleaded, "nor attached as evidence, nor raised in any court filings prior to [Cooper's] objections to the R&R," and therefore, the Court cannot consider these matters as they are outside the pleadings and evidence, and are asserted for the first time in objections (Dkt. #44 at 2-3). Defendants continue

that even if these allegations were properly before the Court, they "do not create a property interest in an explicitly 'part-time temporary, non-tenure-track position' as an Adjunct Faculty member 'with [no] offer of future employment, explicit or implied, beyond Fall 2016 Semester'" (Dkt. #44 at 3, n. 2). The Magistrate Judge found that "Plaintiff was appointed to 'a part-time temporary, non-tenure-track position' through a letter expressly stating it was 'not an offer of future employment, explicit or implied, beyond the fall 2016 Semester,' and even as to that semester, was 'subject to change depending on the needs of the Department, the College, and/or the University'" (Dkt. # 35 at 12). The Magistrate Judge therefore concluded that "[b]y reserving the right to change the appointment at any time and for any reason, the language of TWU's appointment letter undermines any claim that Plaintiff was promised anything other than at-will employment for the entire Fall 2016 semester" (Dkt. #35 at 12). Further, the Report and Recommendation noted that TWU's policies also did not limit at-will employment, but "[e]ven assuming the TWU policy for employees terminable at will applies to employees who, like Plaintiff, received appointment letters rather than tenure contracts, the language of the appointment letter itself creates an at-will employment relationship, which the policies do not operate to change" (Dkt. #35 at 12-13). Accordingly, the Magistrate Judge concluded that Cooper does not have a property interest in her employment with TWU, and therefore, TWU did not deprive Cooper of a property interest protected by the Fourteenth Amendment's Due Process Clause when it fired her from her appointed position, even if it failed to afford her a pre-termination or post-termination hearing in so doing (Dkt. #35 at 12-13).

"A plaintiff asserting a due process claim in the public employment context must demonstrate that he has a clearly established property interest in his employment." *Gaumond v. City of Melissa, Texas*, 227 F. Supp. 2d 627, 631 (E.D. Tex. 2002) (citing *Schultea v. Wood,*

27 F.3d 1112, 1116 (5th Cir. 1994)). "Texas law imposes a strong presumption in favor of at-will employment. Where a plaintiff relies on an employment policy, as opposed to an employment contract, to rebut the presumption of at-will employment, the proffered employment policy must contain explicit contractual terms altering the at-will relationship in a meaningful way (e.g., through an employment contract). Texas courts are reluctant to imply deviation from at-will employment from ambiguous employment policies." *Roberts v. Titus Cty. Mem'l Hosp.,* 129 F. App'x 82, 85 (5th Cir. 2005) (internal citations omitted). Thus, to prove an alleged due process violation, Cooper must show a property interest in her employment arising from an expressed or implied contract. *Gaumond*, 227 F. Supp. 2d at 631 (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).

In support of her argument that she has a property interest in her continued employment at TWU, Cooper cites to two cases: (1) *Perry v. Sindermann*, 408 U.S. 593 (1972); and (2) *Wilkerson v. Univ. of N. Tex.*, 223 F.Supp.3d 592 (E.D. Tex. 2016).[3] In *Sindermann*, the Supreme Court remanded the case for additional proceedings to further examine whether the plaintiff had a property interest in his continued employment as a state professor in light of the plaintiff's allegations that he was tenured under his university employer's *de facto* tenure program and under guidelines promulgated by the Coordinating Board of the Texas College and University System. 408 U.S. at 602-03. Aside from the fact that the *Sindermann* case does not stand for the proposition that allegations of the existence of rules and understandings, promulgated and fostered by state officials equate to a property interest in continued employment, Cooper has made not made the same or even similar arguments in the instant case. In *Wilkerson*, the court found that the plaintiff's allegations that "the long-standing custom and practice at UNT that non-tenured teachers who have

---

[3] Cooper mistakenly asserts this is a Fifth Circuit opinion. It is not. In fact, this case is currently pending before the Fifth Circuit.

multi-year appointments can rely on continued employment until the expiration of the full term of their contract as long as their job performance meets or exceeds expectations[,]…he received favorable evaluations up until his termination….[and] that the OEO exonerated him of any violation of UNT's Sexual Harassment Policy or the Consensual Conduct Policy" were sufficient to support a claim for deprivation of his property interest in continued employment. 223 F.Supp.3d at 605. Again, Cooper here does not make the same or even similar allegations.

Even considering the new facts alleged by Cooper in her objections, the Court agrees with the Magistrate Judge's finding that "Plaintiff was appointed to 'a part-time temporary, non-tenure-track position' through a letter expressly stating it was 'not an offer of future employment, explicit or implied, beyond the fall 2016 Semester,' and even as to that semester, was 'subject to change depending on the needs of the Department, the College, and/or the University.'" Cooper's allegations that the circumstances of this case amount to a "reasonable expectation in continued employment" are meritless. The cases Cooper cites to for this proposition are inapposite to the instant case, and the circumstances put forth by Cooper hardly overcome the clarity of Cooper's employment letter that she was an at-will employee for the Fall 2016 semester. Cooper does not have a property interest in her continued employment at TWU because Cooper did not contract for anything other than at-will employment for the Fall 2016 semester. Therefore, Cooper does not have a property interest in her continued employment with TWU, and so TWU did not deprive Cooper of a property interest protected by the Fourteenth Amendment's Due Process Clause when it terminated her employment. Accordingly, these objections are overruled.

## CONCLUSION

Having considered Defendants' timely filed objections (Dkt. #40), Cooper's responses thereto (Dkt. #46), Cooper's timely filed objections (Dkt. #41), and Defendants' responses thereto

(Dkt. #44), and having conducted a de novo review, the Court adopts the Magistrate Judge's report (Dkt. #35) as the findings and conclusions of the Court, as follows

It is **ORDERED** that Defendants' Motion to Dismiss (Dkt. #27) is **GRANTED IN PART** and Defendants' Motion to Dismiss as to Cooper's procedural due process claims against Defendants in their official and individual capacities for violation of her alleged property interest and Cooper's substantive due process claims against Defendants in their individual capacities for violation of her alleged property and liberty interests is granted; these claims are hereby dismissed

**IT IS FURTHER ORDERED** that the issue of Defendants' qualified immunity defenses related to Plaintiff's claims against Defendants in their individual capacities for an unconstitutional taking and violation of her procedural due process rights based on a liberty interest are referred back to the Magistrate Judge for further consideration. The Magistrate Judge shall order a Rule 7(a) reply be filed. After consideration of the Rule 7(a) reply and any additional briefing deemed necessary by the Magistrate Judge, the Magistrate Judge should enter an amended report and recommendation on the motion to dismiss addressing these claims.

**IT IS SO ORDERED**.
SIGNED this 2nd day of November, 2017.


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE